## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-14172-CIV-MOORE/LYNCH

GMGRSST LTD., d/b/a ABM INVESTMENT
MANAGEMENT, a Utah limited partnership,

      Plaintiff,

vs.

HATCH & DOTY, P.A., a Florida corporation,
and IRA C. HATCH, an individual,

      Defendants.

_____/

### ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment
(DE # 33).

UPON CONSIDERATION of the Motion, and the pertinent portions of the record, and
being otherwise fully advised in the premises, the Court enters the following Order.

**I.**    **Background**

Plaintiff GMGRSST, Ltd. ("Plaintiff") filed this action for legal malpractice against
Defendant Hatch & Doty, P.A. and Defendant Ira C. Hatch, an attorney (collectively
"Defendants"). The alleged legal malpractice arises out of bankruptcy proceedings for two
companies of which Plaintiff was the controlling interest holder. Plaintiff was formerly the
majority interest holder, owning approximately 85 percent of Air Safety International, L.C. ("Air
Safety") and its wholly owned subsidiary, Camber Flight Simulation, L.C. ("Camber Flight").
These companies engaged in the business of flight training and flight simulator manufacturing.

In 1999, Air Safety and Camber Flight became insolvent. Plaintiff retained Defendants to

provide advice regarding the insolvency. Defendants advised Plaintiff that it should authorize

Air Safety and Camber Flight to file Chapter 11 (reorganization) bankruptcy cases. Prior to

filing bankruptcy Air Safety had transferred substantially all of its assets to a third party to satisfy

secured debt. Air Safety's only substantial remaining asset was its pending litigation claims

against Lockheed Martin Corporation, which Plaintiff claims were worth $100,000,000.00. Pl.

Resp. at 3–5. Because Air Safety lost most of its assets and did not have ongoing business

activities, the Bankruptcy Court converted the Chapter 11 reorganization into a Chapter 7

liquidation proceeding. The Chapter 7 bankruptcy trustee then settled the litigation claims

against Lockheed Martin for $10,000,000.00. Id.

Plaintiff asserts that the litigation claims should not have been settled for so little and, if

the bankruptcy had not been converted to a Chapter 7 proceeding, Plaintiff would have ended

with more money from the litigation. Id. Plaintiff alleges that when Defendants advised it to

authorize Chapter 11 bankruptcy, Defendants failed to apprise Plaintiff of the risks associated

with filing Chapter 11 bankruptcy, the likelihood of its conversion to a Chapter 7 liquidation, and

the alternatives to a Chapter 11 bankruptcy. Id. at 3. Plaintiff further claims that Defendants

failed to take adequate measures to prevent the Chapter 11 proceeding from being converted to a

Chapter 7 proceeding, failed to adequately appeal the conversion, and failed to object to the

Trustee's settlement with Lockheed Martin. Id. at 3–4, 9.[1]

---

[1]The initial complaint did not contain these allegations of malpractice. These were added in the Amended Complaint (DE # 29). Defendants' motion for summary judgment only addresses the allegations appearing in the initial complaint, i.e., those related to "the Joint Motion" (discussed below). The allegations in the initial complaint also appear in the amended complaint.

The Chapter 7 bankruptcy proceeded with the liquidation, and interested parties made their claims on the estate according to their alleged interest in the companies. In 2002, Plaintiff and various other Air Safety creditors and equity holders agreed to a full settlement of outstanding creditor claims against the estate (what Plaintiff calls the "Claims Stipulation") so that the estate could be fully administered and the remaining assets returned to Air Safety's owners. Id. at 5. This agreement only resolved creditor claims and did not address the distribution of surplus estate assets remaining after payment of all creditor claims. Id. Plaintiff asserts that if this agreement had been approved and enacted by the Bankruptcy Court, then the money remaining in the estate after all creditors had been paid would have been distributed by default according to percentage of equity interest in the company. Id. at 5, 14.

Subsequent to executing the "Claims Stipulation," Plaintiff claims the Trustee advised Plaintiff that she would expedite certain payments to Plaintiff and other creditors, if Air Safety's owners compromised their equity interests in the company. Id. at 6. Thus, a new agreement was signed by each of the parties and the Trustee (what Plaintiff calls the "Equity Stipulation"). In this stipulation, Plaintiff agreed to a reduction of its equity share in Air Safety such that, instead of 85 percent, Plaintiff would only be entitled to 53.48 percent of Air Safety's remaining surplus. Id. The Bankruptcy Court eventually approved this agreement. In re Air Safety Intern., L.C., 326 B.R. 883 (Bankr. S.D. Fla. 2005).

Before the Court approved the "Equity Stipulation," Plaintiff filed a motion to compel and argued that distribution of surplus assets should be done according to equity percentages existing prior to the stipulation. In re Air Safety Intern., L.C., 336 B.R. 843, 850–51 (S.D. Fla. 2005). The Trustee filed a counter motion seeking distribution of surplus assets based on the

3

terms of the "Equity Stipulation." Id. After the Bankruptcy Court's approval of the "Equity Stipulation," Plaintiff appealed to the United States District Court arguing again that the "Equity Stipulation" was invalid and should not control the distribution of surplus assets. In re Air Safety Intern., L.C., 336 B.R. 843 (S.D. Fla. 2005). Over Plaintiff's objections and arguments, the District Court on appeal held that the "Equity Stipulation" was valid and that Plaintiff was bound by its terms. Id. The surplus assets were distributed according to the equity shares in the agreement. Pl. Resp. at 8. Plaintiff received a little less than $1.5 million as its portion of the surplus, but claims it would have received $2.5 million if the "Equity Stipulation" had not been followed. Id.

Plaintiff argues that the approval and enactment of the "Equity Stipulation" is a direct result of Defendants' negligence in incorrectly attaching the "Equity Stipulation" to the "Joint Motion to Approve Compromise and Settlement of Certain Unsecured Claims and to Commence Immediate Interim Distribution" (hereinafter "the Joint Motion") when Defendants should have attached the "Claims Stipulation." Id. at 12–14. Plaintiff alleges that Defendants admitted they mistakenly attached the "Equity Stipulation" instead of the "Claims Stipulation" to the Joint Motion. Id. at 7–8. Plaintiff further alleges that Defendants agreed to correct the mistake, but then failed to do so, and supported the joint motion as filed. Id. at 8.

Defendants brought the instant motion requesting summary judgment as to the claims for legal malpractice arising from Plaintiff's allegations that Defendants attached the wrong stipulation to the Joint Motion. Defendants argue that the Joint Motion and its attachment could not have proximately caused Plaintiff any harm because attaching the "Equity Stipulation" was not negligent and, even if it was, Plaintiff cannot show that it proximately caused any damages.

4

## II.    Standard of Review

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a
> matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party:

> may not rest upon the mere allegations or denials of the adverse party's
> pleading, but the adverse party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing that there is a
> genuine issue for trial.

5

Fed. R. Civ. P. 56(e).  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III.    Discussion

Under Florida law, "in a claim for legal malpractice, a plaintiff must plead and prove the following elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of the client's loss." Steele v. Kehoe, 747 So.2d 931, 933 (Fla. 1999).  In this case, it is not disputed that Defendants were employed by Plaintiff for legal services.  However, Defendants argue that Plaintiff cannot show that they neglected a reasonable duty, or that they caused the Plaintiff to suffer any loss.

Plaintiff argues that it instructed Defendants to attach the "Claims Stipulation" to the Joint Motion, and that Defendants had a duty to follow Plaintiff's wishes and to look after Plaintiff's best interests, but that Defendants negligently attached the "Equity Stipulation" to Plaintiff's detriment.  Defendants counter that the "Equity Stipulation" was the only valid stipulation, and they had a duty to attach the correct binding stipulation.

The "Equity Stipulation" was agreed upon and signed after the "Claims Stipulation," and it includes the following clause indicating that it superseded all other earlier agreements:

> This stipulation contains the entire understanding and agreement of the parties
> and there are no prior or contemporaneous promises, representations,
> agreements, warranties, or undertakings by any party to the other, either oral or

6

> written of any character or nature, except as set forth in this stipulation. . . .
>
> Each party waives any right to claim that this stipulation was modified,
>
> canceled, superseded, or changed by any oral agreement, course of conduct, or
>
> estoppel.

Def. Mot. Tab 3, Stipulation for Settlement at 4 ¶12.

Defendants further argue that the doctrine of collateral estoppel prevents Plaintiff from arguing that the "Equity Stipulation" is not the valid and controlling settlement agreement. "Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." Quinn v. Monroe County, 330 F.3d 1320, 1328 (11th Cir. 2003). "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." Id. at 1329. Plaintiff has argued before in the Bankruptcy Court and the United States District Court in its appellate capacity that the "Equity Stipulation" was not a valid agreement, raising similar issues and arguments as are raised in this action. The District Court found that only one stipulation agreement was signed by all the parties and the Trustee, namely what Plaintiff calls the "Equity Stipulation," and that this signed stipulation included in one complete agreement the disposition of creditor claims (as described in the "Claims Stipulation") and equity components. In re Air Safety Intern., L.C., 336 B.R. at 851 n.6. The District Court further held that the "Equity Stipulation" or stipulation for settlement signed by the parties and trustee was valid and fully enforceable. In re Air Safety Intern., L.C., 336 B.R. at 854–65. This Court finds that the elements of collateral estoppel are present here,

7

and Plaintiff is estopped from arguing that the "Equity Stipulation" is not a valid and enforceable settlement agreement between all parties to the bankruptcy proceedings.

Plaintiff, however, has at least one email in which Defendant Hatch admitted, "the fact that the wrong stip was filed was my mistake." Madsen Decl. ¶11, Ex. E. Plaintiff submits affidavits indicating that Defendant Hatch admitted that it was a mistake to attach the stipulation to the Joint Motion, and that he assured Plaintiff that he would correct the mistake and submit the correct stipulation. Pl. Resp. at 7–8. Defendant never changed the stipulation and later encouraged the Bankruptcy Court to approve the Joint Motion as filed. Id. Defendants can be said to have taken on a duty to file the Claims Stipulation in place of the Equity Stipulation, if Plaintiff can show that Defendants voluntarily accepted that responsibility. The Court finds that a rational trier of fact might be able to find that Defendants accepted a duty to file the "Claims Stipulation" or correct the Joint Motion to include it.

However, even if it can be said that Defendants were negligent, Plaintiff would still have to show that the negligence proximately caused Plaintiff to suffer some detriment or loss. Steele, 747 So.2d at 933. As discussed above, the Bankruptcy Court and the District Court in its appellate capacity both found that the "Equity Stipulation" as filed with the Joint Motion was a valid and enforceable settlement agreement and rejected Plaintiff's argument that surplus assets should have been divided only by equity share existing before the stipulation. In re Air Safety Intern., L.C., 336 B.R. at 854–65. Also, because Plaintiff has fully litigated the issue of whether the stipulation was valid and fully enforceable, Plaintiff is collaterally estopped from challenging its validity again in this Court. Because the "Equity Stipulation" must be considered the correct and enforceable settlement agreement, it must be assumed that this stipulation would have been

8

approved by the Bankruptcy Court regardless of whether it or the "Claims Stipulation" had been attached to the Joint Motion. In fact, after Plaintiff attempted to compel distribution according the pre-stipulation equity share, the Trustee filed a motion to approve distribution according to the terms of the "Equity Stipulation." Because the stipulation is a valid and enforceable settlement agreement and Plaintiff signed it, Plaintiff would not have been able to escape its terms and receive an extra percentage of the surplus assets. Therefore, Plaintiff cannot show that it suffered any damages or loss because Defendants attaching the "Equity Stipulation" to the Joint Motion.

Plaintiff does argue that the District Court in its appellate capacity might not have approved the "Equity Stipulation" as the only valid and enforceable settlement agreement, if Defendants had not attached the "Equity Stipulation" to the Joint Motion. The District Court based its opinion in part on finding that Plaintiff was "judicially estopped" from arguing that the "Equity Stipulation" was not valid and enforceable. The District Court found that Plaintiff had initially encouraged the Bankruptcy Court to adopt the "Equity Stipulation" by "join[ing] the other Parties in signing the Joint Motion regarding Phase I distributions and supporting the Joint Motion before the bankruptcy court." In re Air Safety Intern., L.C., 336 B.R. at 863. However, the District Court also found that Plaintiff's support of the "Equity Stipulation" when it signed it contributes to the inconsistent positions giving rise to judicial estoppel. Further, the District Court ran through the history and negotiations behind the stipulation and gave other reasons for upholding the stipulation as valid and enforceable. In re Air Safety Intern., L.C., 336 B.R. at 854–65 The Court finds that the reasons given by the District Court are sufficient to justify its holding that the stipulation is valid and enforceable. Therefore, it appears that Plaintiff would

9

not be able to prove that the resulting settlement or distribution of surplus assets would have been any different if Defendants had attached the "Claims Stipulation." Without showing proximate causation and loss, Plaintiff cannot prove the final element of legal malpractice.

**IV.    Conclusion**

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (DE # 33) is GRANTED IN PART. To the extent it seeks Summary Judgment on the Claims related to attaching the "Claims Stipulation" to the Joint Motion, summary judgment is GRANTED in favor of Defendants. The remaining allegations and claims are still pending against Defendants.

DONE AND ORDERED in Chambers at Miami, Florida, this 30th day of May, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record